Rosen, J.,
dissenting.
I agree with the majority that the parties did not present this court with an issue that opens the door to the invited-error analysis *9 adopted by the Court of Appeals. I disagree with the conclusion that the evidence was insufficient to sustain a conviction of theft by deception.
Classic instances of theft by deception might involve Nigerian princes or the Rrooldyn Bridge. The defendant might fie about the authenticity of a document that the victim is signing, or the defendant might misrepresent the nature of something that the victim is buying.
The present case offers a different scenario. Here, the defendant lied about where the victim s property was located. The lies were of two lands. First, Laborde lied when she said that certain property was no longer located on the farm where she and Price had lived together. Specifically, the dress uniform that he sought from her for his hearing in West Virginia was still in a closet in the house, although she insisted that it had been returned to Price’s or the Army’s custody. Second, Laborde lied about keeping property in a place accessible to Price or the Army when she had actually sold it or given it away.
Laborde nevertheless argues on appeal that her deception served the purpose of concealing her exercise of unauthorized control, not enabling the unauthorized control. The Court of Appeals accepted this argument, stating in dicta that Laborde’s fies "were all post facto and therefore did not induce Price to transfer his military gear to Laborde.” 2013 WL 2395452, *3.
Although the State’s theory may present an unusual case of theft by deception, I would find that die State presented sufficient evidence to sustain a conviction under that theory. Price’s military gear was exclusively subject to Laborde’s control because she placed restraints on his access to their mutual home. The only way that Price could locate his gear was to rely on Laborde’s representations of where tire gear was located. That way, law enforcement, acting on his behalf, could recover the gear, or, much later, Price could take a one-time attempt to find the gear while he was escorted by law enforcement. Her dishonest statements created a barrier to Price regaining possession of the gear.
When Laborde stated that the dress uniform was not on the farm and did not disclose that it was, in fact, in her closet, neither Price *10 nor the police had any reason to look there among her personal effects. When she stated that other gear was at the barracks and did not admit that she had placed it in a shed on the farm, she likewise provided a disincentive for Price to search the outbuildings. She did not have to move the property off die farm in order to deprive Price of the effective ability to regain possession. Her deceit precluded Price from obtaining at least some of his property for a time until she sold it or gave it away. Her denial that she knew where the missing property was, or her various claims of having returned the property to Price s or the Army’s custody, constituted an exercise of control over the property by means of deception.
I would affirm the conviction as supported by the evidence educed at trial.